No. 82-265

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

MODERN MACHINERY,

      Plaintiff and Appellant,

  -vs-

FLATHEAD COUNTY,

      Defendant and Respondent.

Appeal from: District Court of the Eleventh Judicial District,
In and for the County of Flathead, The Honorable
Douglas G. Harkin, Judge presiding.

Counsel of Record:

    For Appellant:

        James D. Moore, Kalispell, Montana

    For Respondent:

        Gary R. Christiansen, Kalispell, Montana
        Ted O. Lympus, County Attorney, Kalispell, Montana

Submitted on Briefs: November 24, 1982

Decided: December 29, 1982

Filed: DEC 29 1982

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiff brought this action for breach of contract in the Eleventh Judicial District in Flathead County. A jury trial commenced in Kalispell, Montana, on February 24, 1982. On February 26, 1982, the jury returned a verdict awarding plaintiff $10,000. Plaintiff and defendant appeal from the judgment entered upon the jury's verdict.

On or about July 30, 1979, the Flathead County commissioners issued a call for bids for the purchase of a jaw-type rock crusher to be used by the Flathead County road department. The commissioners received three bids in response to the call, one from plaintiff in the amount of $305,725 and two from another Kalispell distributor, Westmont; one for $201,193 and the other for $200,870. On August 22, 1979, the day the bids were opened, the commissioners voted to take the bids under advisement pending recommendation of the county road department. Representatives from the road department and Commissioner Frank Guay then flew to Cedar Rapids, Iowa, with plaintiff's agent, Jim Fox, to view plaintiff's crusher. Commissioner Guay and the representatives from the road department were impressed with features contained on plaintiff's crusher which were not available on Westmont's models.

On September 14, 1979, the commissioners met with members of the road department and Jim Fox to discuss the crusher bids. The road department recommended that the commissioners purchase plaintiff's crusher. Commissioner Guay then made a motion to accept the road department's recommendation. The motion was seconded by Commissioner Joan Deist. The motion was recorded in the minutes of the meeting as follows:

> "Motion to Guay to accept the Road Department's recommendation to purchase gravel crusher from Modern Machinery for $305,725. The only other bid being received having been for used power plant generator contained in a second unit not attached to the crusher itself, thereby creating operational problems. Motion seconded by Joan A. Deist, motion

carried.    Note:    Mel  Wollan  votes  no  on
crusher  bid  as  the  lower  bid  for  a  jaw  crusher
was  very  adequate  and  a  savings  of  $100,000."

Everyone  in  attendance  at  the  meeting  who  testified  at  the
trial  felt  that  the  county  was  going  to  eventually  purchase
plaintiff's  crusher.    On  September  17,  the  following  Monday,  an
attorney  representing  Westmont  delivered  a  letter  to  commissioner
Frank  Guay  which  requested  that  the  award  to  plaintiff  be  vacated
or  he  would  seek  to  enforce  Westmont's  rights  in  the  matter  by
whatever  means  permitted  by  law.    Guay  then  called  Jim  Fox  in
Missoula  and  told  him  if  the  crusher  had  been  ordered  from  the
factory,  to  have  the  order  stopped.

On  Wednesday,  Fox  and  another  representative  for  plaintiff,
Larry  Exe,  met  Guay  in  Helena,  Montana,  to  discuss  the  crusher.
Guay  testified  at  trial  that  he  again  told  Fox  and  Exe  to  stop
order  on  the  crusher  if  it  had,  in  fact,  been  ordered.    Fox  and
Exe  testified  that  the  meeting  in  Helena  was  mainly  to  discuss
the  political  ramifications  to  Guay  should  the  sale  be  completed.
After  the  meeting  in  Helena,  Exe  called  the  factory  to  see  how
far  they  had  progressed  on  the  order.    Exe  told  the  factory  to
let  him  know  how  much  expense  would  be  incurred  if  plaintiff  was
to  stop  order  on  the  crusher  at  that  time.    That  was  the  last
contact  plaintiff  had  with  the  factory  concerning  a  stop  order  on
the  crusher.

Fox,  Guay  and  Exe  then  met  with  Assistant  County  Attorney,
Charles  Kuether,  at  the  Flathead  County  commissioner's  office.
Again,  Guay  told  plaintiff's  representatives  not  to  order  the
crusher.    Guay  stated  that  the  bid  award  was  not  final  until  the
clerk  and  recorder's  office  issued  a  letter  accepting  plaintiff's
bid  and  rejecting  all  other  bids.    A  second  meeting  with  Kuether
followed  attended  by  Fox,  Exe,  Guay  and  plaintiff's  attorney.
Again,  Guay  stated  the  bid  award  was  not  final  until  the  clerk
and  recorder's  office  issued  notice  of  the  successful  bid.
Plaintiff's  counsel  requested  a  letter  directing  plaintiff  to
either  order  or  stop  order  on  the  crusher.    Guay  refused  to  draft

such a letter stating that since the commissioners had not formally ordered the crusher it was not necessary to rescind an order. That was the last meeting between plaintiff and the commissioner's office.

On November 11, 1979, plaintiff tendered the crusher to Flathead County pursuant to the statement in the call for bids that delivery must be within forty-five days from date of order. The county refused to accept delivery of the machine. On November 20, 1979, the commissioners met and issued a letter to plaintiff stating they had decided to reject all bids received in response to its call for bids on the rock crusher. Plaintiff subsequently transported the crusher to Tempe, Arizona, where it was finally sold. On December 11, 1979, plaintiff filed a complaint in the District Court of the Eleventh Judicial District, in and for the County of Flathead, against Flathead County alleging breach of contract. After a jury trial commencing February 24, 1982, the jury returned a verdict in favor of plaintiff assessing damages in the amount of $10,000. Plaintiff then filed this appeal and defendant cross-appeals.

The substance of the appeals is as follows:

1. Whether there was a valid contract.

2. Whether the jury was properly instructed on the measure of damages.

3. Whether the jury verdict was supported by substantial credible evidence.

The essential elements of a contract are: parties capable of contracting, consent, a lawful objective, and consideration. Section 28-2-102, MCA; Keil v. Glacier Park Inc. (1980), _____ Mont. ____, 614 P.2d 502, 505, 37 St.Rep. 1151. In this case the issue of whether or not there was a contract goes to the requirement of consent. There is consent to contract when there has been an offer and acceptance of the offer.

Here, plaintiff's written bid issued in response to Flathead County's call for bids constitutes an offer. However, a written

bid has consistently been construed as nothing more than an offer to perform labor or supply materials, and the offer does not ripen into a contract until accepted by the offeree. Carriger v. Ballenger (1981), _____ Mont. _____, 628 P.2d 1106, 1108, 38 St.Rep. 864. Thus, we must determine whether the Flathead County commissioners accepted plaintiff's offer thereby creating a contract.

After the bids were opened, the commissioners voted to take the bids under advisement pending a recommendation by the Flathead County road department. On September 14, 1979, the commissioners met with members of the road department and Jim Fox to discuss the bids. At that meeting the members of the road department recommended that the commissioners purchase plaintiff's crusher. A motion was made, seconded and recorded: "Motion by Guay to accept the road department's recommendation to purchase gravel crusher from Modern Machinery for $305,725.00." (Emphasis added.)

Commissioner Joan Deist testified that the commissioners normally make one of three motions upon bids received in response to a call for bids; motion to accept; motion to deny; or motion to take under advisement. Initially, the commissioners took the crusher bids under advisement pending recommendation of the road department. On September 14, the road department recommended that the commissioners purchase plaintiff's crusher. Commissioner Guay moved to accept the road department's recommendation, the motion was seconded and duly recorded in the minutes of the meeting. The third commissioner later noted a no vote on the minutes as he wasn't in attendance at the September 14 meeting.

Flathead County argues there was not acceptance as there was no notice of bid award issued by the clerk and recorder's office. However, everyone in attendance at the meeting, including the commissioners, testified that they thought the commissioners were going to buy plaintiff's crusher. We find there was acceptance

on the part of Flathead County when the commissioners accepted and made minutes reflecting the acceptance, and plaintiff was only fulfilling its obligation on the contract by ordering and delivering the crusher. There is no statutory provision for the procedure argued by the county.

Flathead County further argues there was no writing which satisfies the statute of frauds, section 30-2-201, MCA. As stated above, this Court has previously held a written bid can ripen into a contract if accepted by the offeree. Carriger v. Ballenger, supra. Here, we have found the written bid was accepted by Commissioner Guay's motion which was seconded by Commissioner Deist and recorded in the minutes of the September 14 meeting. Thus, there was a valid contract, not barred by the statute of frauds.

The next issue is whether the jury was properly instructed on the measure of damages. First, plaintiff argues the giving of court's instruction No. 7 was in error. The instruction states:

> "If you find that the Plaintiff is entitled to damages, you may award any of the following: 1) Lost net profits; 2) Incidental damages such as expenses incurred in the transportation of goods after the buyer's breach."

The measure of damages when a buyer wrongfully rejects or revokes acceptance of goods is governed by the Uniform Commercial Code. Section 30-2-703, MCA, states: "Where the buyer wrongfully rejects or revokes acceptance of goods . . . the aggrieved seller may: (d) resell and recover damages as hereinafter provided (30-2-706); (e) recover damages for nonacceptance (30-2-708) . . ." Pursuant to section 30-2-706, MCA: "the seller may recover the difference between the resale price and the contract price together with any incidental damages . . . less expenses saved in consequence of the buyer's breach." Pursuant to section 30-2-708, MCA: "the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages . . .

less expenses saved in consequence of the buyer's breach." or "If the measure of damages provided in subsection (2) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit . . . which the seller would have made from full performance by the buyer together with any incidental damages . . ., due allowance for costs reasonably incurred and due credit for payments or proceeds of resale."

We find court's unstruction no. 7 was not a correct statement of the law as stated by the U.C.C. The possible measures of damages under the U.C.C. are not stated in permissive language, but rather, are mandatory and specifically state the amount of recoverable damage depending upon the remedy seller has pursued. The District Court's use of the words "may award any of the following" in instruction no. 7 implied to the jury that they were not required by law to award specific damages. Thus, the giving of the District Court's instruction no. 7 was in error as being in contradiction of the U.C.C.

Plaintiff also claims the giving of the following instruction was in error:

> "A party who alleges that it has been damaged by the breach of contract by another party is bound to exercise reasonable care and dili-gence to avoid loss and to minimize its damage. A party may not recover for losses which could have been prevented by reasonable efforts on its part."

We find the giving of this instruction was in error. In this case a method of mitigating damages is addressed by section 30-2-704(2), MCA. The section states:

> "Where the goods are unfinished an aggrieved seller may in the exercise of reasonable com-mercial judgment for the purposes of avoiding loss and of effective realization either complete the manufacture and wholly identify the goods to the contract or cease manufacture and resell for scrap or salvage value or proceed in any reasonable manner."

This section is better understood by looking to the Official Comment to section 30-2-704(2), MCA:

> "Under this Chapter the seller is given

- 7 -

> express power to complete manufacture or pro-
> curement of goods for the contract unless the
> exercise of reasonable commercial judgment as
> to the facts as they appear at the time he
> learns of the breach makes it clear that such
> action will result in a material increase in
> damages. The burden is upon the buyer to show
> the commerically unreasonable nature of the
> seller's action in completing manufacture."

Here, Commissioner Guay expressed concern about the contract at an early date, but, the board of commissioners refused to repudiate the contract. The county has power to contract, and its contracts are the contracts of its board of county commissioners, not of the individual members thereof. Bennett v. Petroleum County et al. (1930), 87 Mont. 436, 447, 288 P. 1018, 1020. Commissioner Guay did not have the authority to individually revoke the contract and when plaintiff asked that the board take some action it refused. Thus, plaintiff was acting in a commercially reasonable manner to fulfill its obligation under the contract. If plaintiff had not delivered the crusher within forty-five days, it would have breached the contract and exposed itself to legal liability. Had the board taken some action at an early date, plaintiff could have mitigated its damages under section 30-2-704, MCA. The District Court's instruction unfairly placed the entire burden to mitigate damages upon plaintiff whereas the comments to section 30-2-704, MCA, state: "the burden is upon the buyer [Flathead County] to show the commerically unreasonable nature of the seller's action in completing manufacture." Thus, the giving of the Court's instruction was in error.

The last issue is whether the jury verdict was supported by substantial credible evidence. As stated above, the measure of damages is governed by section 30-2-706, MCA, and section 30-2-708, MCA. Under section 30-2-706, MCA, the damages would be the contract price ($305,725) plus incidental damages less the resale price ($186,499.86) and expenses saved in consequence of the buyer's breach. Under section 30-2-708(2) the damages would be plaintiff's anticipated profit ($78,879.56) plus incidental

damages less credit for payments made or proceeds of resale. Using either section in this instance the record shows plaintiff's damages were far in excess of $10,000 and there is no substantial credible evidence which can support the jury verdict.

We affirm the case as to county's liability and judgment is reversed and the case is remanded to the District Court for a hearing on damages by following the applicable statutes.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices