No. 89-03

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

IN RE THE MARRIAGE OF
CAROL C. DALLEY,

        Petitioner and Appellant,

   and

MARK F. DALLEY,

        Respondent and Respondent.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Davidson & Poppler; Doris M. Poppler, Billings, Montana

    For Respondent:

        Cavan, Smith, Grubbs & Cavan; John J. Cavan, Billings,
Montana

Submitted on Briefs: March 31, 1989

Decided: May 4, 1989

Filed:

Clerk

Mr. Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Carol Dalley, petitioner, appeals from the denial of her motion to compel satisfaction of judgment by the District Court of the Thirteenth Judicial District, Yellowstone County. We affirm in part and reverse and remand for further proceedings.

The following issues are raised on appeal:

1. Whether the District Court erred in finding that respondent did not accept appellant's offer to satisfy the judgment by transferring stock instead of cash.

2. Whether appellant's delivery of stock and cash to respondent tolls the interest on the judgment pending appeal.

Parties' marriage was dissolved in April of 1987. On November 10, 1987, the trial court apportioned the marital estate between the parties and ordered appellant, Carol Dalley (wife), to pay respondent, Mark Dalley (husband), a sum of money necessary to pay husband 30% of certain assets within 30 days of judgment. The total amount to be paid to husband was $129,607.40. Wife appealed to this Court and husband cross-appealed under In Re Marriage of Dalley (Mont. 1988), 756 P.2d 1131, 45 St.Rep. 1017. We affirmed the District Court's judgment and denied husband's petition for a rehearing on July 5, 1988.

The following facts were derived from the record and the various affidavits of the parties.

On July 25, 1988, wife's attorney sent husband's attorney a letter offering stock and a personal check to husband in satisfaction of the judgment. Husband's attorney was out of town when the letter was received by his firm. He returned on August 2, 1988. On that day, husband, with

permission of his attorney, spoke with wife's attorney by telephone who asked him if he was aware of the July 25, 1988, letter. He said that he was and that the proposal appeared all right but that he wanted to consult his attorney before agreeing to the proposal. On August 3, 1988, the attorneys discussed the conversation wife's attorney had with husband.

On the morning of August 4, 1988, wife signed over 1,668 shares of Amoco stock, with a value of $124,266.00, and executed a personal check for the excess due in the amount of $5,341.40 to husband. Early that afternoon, wife's attorney called husband to confirm the stock substitution. Husband stated that he could not accept the stock offered in satisfaction of the judgment because of the tax consequences associated with it. Wife's attorney then delivered the stock to husband's attorney's office late that afternoon despite her earlier conversation with husband. Husband's attorney was not present when delivery was made.

After a discovery deposition was held on August 10, 1988, parties' attorneys discussed the substitution of stock in lieu of cash. Thereafter, husband's attorney consulted a tax attorney on the matter. On August 23, 1988, wife's attorney called husband's attorney and inquired into the status of the property settlement. Husband's attorney stated once again that because of the tax burden accompanying the stock, it would not be accepted in satisfaction of the judgment. Wife's attorney then filed a motion to compel satisfaction of the judgment. The motion was denied on October 26, 1988.

The first issue raised on appeal is whether the District Court erred in finding that respondent did not accept appellant's offer to satisfy the judgment by transferring stock instead of cash.

In the District Court decree of November 10, 1987, it ordered that wife pay:

> a *sum of money* necessary to pay to husband 30% of the value of [certain] assets . . . the sum of $129,607.40. Deeds, titles, checks and such other documents as may be necessary to accomplish this shall be executed and delivered within thirty days of this order. (Emphasis added.)

Wife wished to substitute stock for the money judgment. The actual issue at bar is whether an oral contract existed between husband and wife which authorized the substitution. Under § 28-2-102, MCA, the essential elements of a contract are:

(1) identifiable parties capable of contracting;

(2) their consent;

(3) a lawful objective;

(4) sufficient cause or consideration.

Here, only element two, consent, is contested. "There can be no binding contract without mutual consent of the parties." Christenson v. Billings Livestock Com'm Co. (1982), 201 Mont. 207, 210, 653 P.2d 492, 494. Consent must be free, mutual and communicated. Interstate Production Credit Ass'n v. Abbott (Mont. 1986), 726 P.2d 824, 826, 43 St.Rep. 1829, 1832. Further, consent is established when there has been an offer and an acceptance of that offer. Modern Machinery v. Flathead County (1982), 202 Mont. 140, 144, 656 P.2d 206, 209.

In the instant case, the court ordered wife to pay the sum due, $129,607.40, in money. She offered, instead, to transfer to husband 1,668 shares of Amoco stock valued at $74.5 per share, totaling $124,266.00, coupled with a $5,341.40 personal check to make up the excess due. On July

25, 1988, wife's attorney sent husband's attorney the following letter:

> On behalf of Carol Dalley, we will deliver to you on August 5, 1988, 1,668 Amoco shares valued at 74.5 per the valuation fixed in the decree. In addition we will submit a check for the difference in the amount of $5,341.40 payable to your firm and Mark Dalley.

Wife argued that the letter effectuated a valid offer. Husband disagreed contending that the letter was not an offer but merely a notification of something wife intended to do in the future. We disagree. An offer is:

> The manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.

Restatement (Second) of Contracts, § 24 (1979).

Wife's attorney's letter of July 25, 1988, clearly constitutes an offer. Wife communicated her proposal and husband understood it as evidenced by his statement on August 2, 1988, that the offer appeared all right but that he needed to consult his attorney first.

However, the offer must be accepted before a contract is formed. In Kuchinski v. Security Gen. Ins. Co. (1963), 141 Mont. 515, 519, 380 P.2d 889, 891, we stated that in order to effectuate a contract, there must not only be a valid offer by one party but also an unconditional acceptance, according to its terms, by the other. See also, Beale v. Lingquist (1932), 92 Mont. 480, 488, 15 P.2d 927, 930.

Wife claims that husband telephoned wife's attorney on August 2, 1988, and unequivocally accepted the offer on the condition that the $5,341.40 check be paid to him alone and not his attorney. She states that this conditional acceptance was confirmed the next day with husband's attorney. Wife argues that she not only met the condition

but then relied on it as an acceptance and transferred the stock certificates into husband's name the morning of August 4, 1988. She further claims that it was not until August 23, 1988, that husband rejected the stock and that the rejection came too late since the oral contract was formed on August 2, 1988.

Section 28-2-503(2), MCA, provides:

A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known or ought to be known to the person accepting. (Emphasis added.)

Here, husband asserts that his August 2, 1988, telephone conversation with wife's attorney was not an acceptance because he clearly stated that although the offer appeared all right, he would first have to consult with his attorney on the matter. Husband did so consult his attorney. At that point, it is clear that husband was merely considering the offer and made no acceptance.

In Chadwick v. Giberson (1980), 190 Mont. 88, 92, 618 P.2d 1213, 1215, we held that, "It is a well-established rule that there must be mutual assent or a meeting of the minds on all essential elements or terms to form a binding contract." Here, husband did not intend to accept the offer on August 2, 1988, because he conditioned the acceptance pending consultation with his attorney. Thus, the contract of August 2, 1988 lacked mutual assent.

Prior to delivery of the stock, husband was informed that although there would be no tax liability associated with the transfer of stock from wife to husband, there would be a serious tax liability should husband then sell the stock. The tax burden made the purported value of the stock much lower than he originally expected. On the morning of August 4, 1988, wife's attorney telephoned husband and he told her that

he absolutely could not accept the stock that was offered in satisfaction of the judgment because of the tax burden.

Further, although wife's letter stated that the stock would be delivered on August 5, 1988, she delivered it in the late afternoon of August 4, 1988, despite her earlier conversation with husband. The stocks were received by a partner of husband's attorney as he was not in the office at that time.

On August 10, 1988, husband's attorney participated in a discovery deposition at which wife's attorney was a witness. Afterwards, parties' attorneys once again discussed whether stock would be sufficient to satisfy the judgment. Shortly thereafter, husband's attorney consulted a tax attorney who warned him of the liability problems upon transfer.

On August 23, 1988, wife's attorney telephoned husband's attorney regarding the status of the property distribution. She was again told that the stocks would not be accepted to satisfy the money judgment.

There is substantial evidence to support the District Court's finding that there was no meeting of the minds on August 2, 1988, or any other date, and thus, no oral agreement by husband to accept stocks in satisfaction of the judgment. See, Diede v. Davis (1983), 203 Mont. 205, 212, 661 P.2d 838, 841.

> Where the existence of an oral contract is contested and the evidence is conflicting, the existence of the contract is a question for the trier of fact.

Como v. Rhines (1982), 198 Mont. 279, 284, 645 P.2d 948, 950-51. See also, Keil v. Glacier Park, Inc. (1980), 188 Mont. 455, 460, 614 P.2d 502, 505. The District Court properly considered the evidence and found that no contract existed.

The second issue raised on appeal is whether wife's delivery of stock and cash to respondent on August 4, 1988, tolls the interest on the judgment pending appeal.

The District Court's order of October 26, 1988, reads:

Since Mr. Dalley did have some culpability in the transaction, Mrs. Dalley might be entitled to a cancellation of interest on the judgment from the date the stock was tendered through the date of this order.

Wife argues that since husband is still in possession of the stock that he should not be able to collect any post-judgment interest after August of 1988. However, wife delivered the stock, never demanded it back, and never made any attempt to recover it. Husband has received no dividends or other benefits from holding the stock. We find no merit in this contention as husband was not culpable.

The parties were granted a stay of execution of judgment pending appeal. The stay does not affect interest due. In Knudson v. Knudson (Mont. 1981), 622 P.2d 1025, 1026-27, 38 St.Rep. 154, 156-57, where the husband, in a dissolution action, moved the court for a stay of execution, we held that interest was to be awarded from the date of judgment in the divorce action despite the existence of the stay of execution. Hence, the stay of execution has no effect on interest due in the present case.

Further, Rule 31, M.R.App.P., provides in part:

If a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date the judgment was rendered or made in the district court.

In Re Marriage of Gibson (1983), 206 Mont. 460, 671 P.2d 629, states that interest accrues at the statutory rate from the date on which payment is due--in the present case, the date of judgment--until the date on which payment is made.

Under § 25-9-205(1), MCA, the statutory interest rate is 10% per annum payable on judgments recovered in Montana. The rate must not be compounded.

Therefore, wife is to pay husband $124,266.00, the amount due and owing, in money or a manner acceptable to husband. Interest on that amount is to be calculated from November 10, 1987, the date of judgment, to the date wife pays the sum owed. Interest is to be paid in accordance with § 25-9-205(1), MCA.

Affirmed in part and reversed and remanded for further proceedings in accordance with this Opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

- 9 -

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 89-003

IN RE THE MARRIAGE OF
CAROL C. DALLEY,
      Petitioner and Appellant,

and                     )

MARK F. DALLEY,
      Respondent.

)
)    O R D E R
)

The opinion in this cause was filed with the Clerk of this Court on May 4, 1989. It has come to the Court's attention that certain errors appear in the first full paragraph on page 9, the last page of the slip opinion.

IT IS ORDERED:

1. That the first full paragraph on page 9 of the slip opinion issued May 4, 1989, is revised to read as follows:

> Therefore, wife is to pay husband $129,607.40, the amount due and owing. Interest on that amount is to be calculated from November 10, 1987, the date of judgment, to the date of this order. Interest is to be paid in accordance with § 25-9-205(1), MCA.

2. That the Clerk shall provide copies of this order to counsel for the parties, the District Court of the Thirteenth Judicial District, the State Reporter, and West Publishing Company.

DATED this 10th day of May, 1989.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices