JUSTICE COTTER,
dissenting,
¶60 I dissent. Not only does the majority’s conclusion completely upset the public contract bidding process, it jettisons basic contract principles of offer and acceptance, and ignores the tenets of equitable relief. The ultimate effect of this Opinion is to impose a stricter obligation on MDT to find mistakes in a submitted bid than is imposed on the bidder himself; thus allowing a bidder to amend an offer, after it is accepted, even though he created the offer in haste, failed to use care in checking the details prior to submitting the offer, failed to effectively rule out suspicions that the figures were wrong, and then waited until the contract was accepted before fully reviewing the offer *69 for errors.
¶61 Although the majority applies the standard for reviewing an order granting summary judgment, it ultimately grants relief by reforming Oftedal’s contract. Clearly this is a case in equity. This Court has repeatedly held that equitable issues are a matter of discretion resting with the district court and will be sustained unless an abuse of discretion is shown. Ruegsegger v. Welborn (1989), 237 Mont 317, 321, 773 P.2d 305, 308 (citations omitted). The District Court did not abuse its discretion in refusing to reform Oftedal’s contract pursuant to § 28-2-1611, MCA. Nor did the District Court err when it concluded a contract was formed between Oftedal and MDT upon acceptance of Oftedal’s bid.
¶62 In Baker, the Court stated that “[i]t is a well founded principle of contract law that a contract does not exist prior to the acceptance of a bid by an agency.” Baker v. State, 218 Mont. 235, 238, 707 P.2d 20, 22. The majority rejects the Commission’s reliance on Baker for the proposition that a binding contract is formed upon the acceptance of a low bidder’s bid.
¶63 However, this Court applied similar language in Modern Machinery v. Flathead County (1982), 202 Mont. 140, 656 P.2d 206, when it held that a written bid, issued in response to a call for bids to purchase a piece of equipment, amounted to an offer that ripened into a contract upon acceptance by the commissioners. Modern Machinery, 202 Mont. at 146, 656 P.2d at 210. We stated: “a written bid has consistently been construed as nothing more than an offer to perform labor or supply materials, and the offer does not ripen into a contract until accepted by the offeree.” Modern Machinery, 202 Mont. at 145, 656 P.2d at 209 (citing Carriger v. Ballenger (1981), 192 Mont. 479, 483-84, 628 P.2d 1106, 1108-1109) (emphasis added). In Modern Machinery, we concluded that a binding contract was formed between the comity and the manufacturer when the commissioners accepted the offered bid by seconding and recording a motion to accept the bid during a commissioners’ meeting. Modern Machinery, 202 Mont. at 146, 656 P.2d at 210.
¶64 The conclusion that a contract is formed upon acceptance of an offered bid follows time-honored Montana precedent. In State v. Toole (1901), 26 Mont. 22, 29, 66 P. 496, 499, this Court found that once the statutory prerequisites essential to a valid acceptance are complied with, and a contract is awarded, “there springs into existence vested rights, which the board cannot destroy or impair,” and conditions may not be inserted into the formal written contract if they are “not consonant with the contract already made by virtue of the acceptance *70 of the bid” (the furnishing board’s attempt to rescind a contract, which was formed upon the board’s acceptance of plaintiffs offer, was void) (citation omitted). In Stuewe v. Hindson (1912), 44 Mont. 429, 436-37, 120 P. 485, 487, while holding there was no mandamus remedy available to an unsuccessful bidder, we stated:
In general terms, it is said that a contract is consummated by an offer from one party and its acceptance by another. The advertisement for bids is not an offer which by acceptance constitutes a contract. It is merely an invitation to every bidder to make an offer, which the board may accept, and a contract result, but a party whose offer is not accepted cannot complain or invoke the aid of courts to compel the board to accept his offer (citation omitted). [Emphasis added.]
¶65 The Commission’s reliance on the language of Baker, supra, is not misplaced. There is a century of case law for the proposition that an offer, once accepted, ripens into a binding agreement. I disagree with the majority’s conclusion that the contract was not created until execution of the “formal” contract. Accordingly, I disagree that the contract should be revised, especially given that MDT had no knowledge of any errors at the time it accepted Oftedal’s bid.
¶66 The majority attempts to infer limits on liability based on the mere formality of executing a written contract. This reasoning is not only circular, it also underscores the fact there is no explicit specification prohibiting liability. The procedure of signing the “formal” contract was not a condition precedent to the contract’s enforceability. Section 18-1-202(1), MCA, provides: “The advertisement, request, or solicitation for bids or offers must distinctly specify that all bidders, offerors, tenderers, or contractors shall: (a) whenever bids are solicited ... expressly covenant in any bid that if the bidder is awarded the contract, the bidder will, within the time required as stated in the advertisement or solicitation, enter into a formal contract and give a good and sufficient bond ...” (emphasis added). In addition, bidders must also provide bid security, pursuant to § 18-1-201, MCA.
¶67 From these statutes and Specifications in the Bid Package, the majority crafts a condition precedent to the creation of a contract between Oftedal and MDT. The majority relies on an excerpt from Williston on Contracts to support the proposition that these statutory requirements are intended as conditions precedent to the execution of the “formal” contract. However, the majority fails to refer to § 18-1-201(2), MCA, which describes the requirements for bidder’s security, and states in part that:
[I]n all cases where a public authority or obligee is authorized by *71 law to solicit bids ... such public authority shall require, as a condition precedent to considering any such bids, as evidence of good faith on the part of the bidder, and as indemnity for the benefit of such public authority against the failure or refusal of any bidder to enter into any written contract that may be awarded upon and following acceptance of bid ... that any bid shall contain a written covenant of indemnity conditioned as herein prescribed and that the bid shall be accompanied by bid security of the nature herein specified for the performance of such covenant. [Emphasis added.]
These safeguards are in place as conditions precedent to the public body considering the offer proposed by the bidder, not as conditions precedent to the formation of a binding agreement between the public authority and the successful bidder. Oftedal met these requirements when it promised in its bid proposal that it would sign the contract, and when it provided the required bid security. Based on these promises, MDT considered and ultimately accepted Oftedal’s bid.
¶68 Further, as stipulated by the parties, it is “each bidder’s responsibility to submit its bid in accordance with the bid documents and its review of the scope of work, site of work, and the contract documents.” When it signed the proposed bid, Oftedal agreed to subsection (F) of the Proposal: “In submitting this bid, bidder agrees that it waives any right or ability to claim, request or receive any upward revision of this bid without the express written consent of the Department and in accordance with the Standard Specifications.” Oftedal also affirmed, pursuant to the Proposal, that it examined the site, proposal, standard specifications, supplemental specifications, and special provisions, and that it had sufficient time to prepare its bid. Oftedal assented “to all provisions and requirements of the Contact, as defined in the Standard Specifications.” Oftedal agreed it “would not submit this bid if it did not agree to each and every provision of the Contract.” Oftedal, a seasoned bidder, clearly was aware of all the components and requirements of the agreement between the MDT and Oftedal; thus there was a meeting of the minds between the two parties. See Chadwick v. Giberson (1980), 190 Mont. 88, 92, 618 P.2d 1213, 1215 (“there must be mutual assent or a meeting of the minds on all essential elements or terms to form a binding contract”).
¶69 I would hold that a contract was formed upon the acceptance of Oftedal’s submitted bid, or in the least I would hold that Oftedal should not be rewarded for its negligence in submitting the bid and failing to thoroughly review the figures when it suspected there was *72 error.
¶70 Even if I were to agree with the majority’s conclusion that the contract was formed upon execution of the written agreement, the statute the Court relies on, § 28-2-1611, MCA, is permissive, and does not require revision by a court. All the errors at issue were attributable to only Oftedal, and specifically^ its employee, Lundby, in his preparation of the bid. In an attempt to explain the errors, Oftedal asserted that Lundby’s workload was such that time did not allow complete review, and that due to company organization, Lundby was the only person who could review the bid. These are clearly business practice choices made by Oftedal, for which the State should not suffer given Oftedal’s substantial errors. Moreover, Lundby admitted in a letter to the Department that the mistakes were due to “poor time management” and were a “direct result of [him] not allowing [himself] adequate time to estimate the project.” Clearly these mistakes were not due to ignorance or forgetfulness of facts, and thus did not meet the definition of mistake of fact as required under § 28-2-409, MCA. I agree with the District Court’s conclusion that: “Oftedal chose to conduct business in a seemingly hectic atmosphere without the benefit of having a second person check the bid before it was submitted or other similar ‘safety net.’ ”
¶71 Oftedal should not reap the benefits of its errors, at the expense of the State of Montana. Section 28-2-1611, MCA, states that a court may revise a contract, “so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.” A court is not mandated to revise a contract under § 28-2-1611, MCA. A district court’s decision to provide equitable relief is a matter of discretion which we will sustain absent a showing of an abuse of discretion. Ruegsegger, 237 Mont. at 321, 773 P.2d at 308. Abuse of discretion exists when “the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice.” Lee v. USAA Cas. Ins. Co., 2001 MT 59, ¶ 27, 304 Mont. 356, ¶ 27, 22 P.3d 631, ¶ 27 (citation omitted). Based on the magnitude and nature of Oftedal’s errors, its failure to thoroughly review its bid even when mistakes were suspected, and the absence of any fault attributable to the State, the District Court clearly did not act “arbitrarily without conscientious judgment or exceeded the bounds of reason resulting in substantial injustice.”
¶72 By allowing upward revision of the contract price, the majority also guts the bond forfeiture statute, § 18-1-204, MCA. Section 18-1-204, MCA, states in pertinent part: “[A]ny bidder whose bid is accepted *73 and who shall thereafter refuse to enter into and execute the proposed contract ... as stated in the covenant in the bid and herein, shall absolutely forfeit such moneys... to the public authority concerned and become immediately liable on the bid bond ....” In light of the Court’s holding, successful bidders who want to revise their bid are better off to sign a contract, and later seek relief through the district court, than accept loss of bond pursuant to § 18-1-204, MCA. The majority asserts that this decision does not jeopardize the public bidding process (See ¶ 55 herein). I disagree. This decision has the effect of inviting a party to prolong the uncertainty in the bidding process, by by-passing an appeal of the decision of the Commission in favor of the pursuit of equitable relief from the court.
¶73 The clean hands doctrine provides that “[pjarties must not expect relief in equity, unless they come into court with clean hands.” See Kauffman-Harmon v. Kauffman, 2001 MT 238, ¶ 19, 307 Mont. 45, ¶ 19, 36 P.3d 408, ¶ 19 (citation omitted). Moreover, “[n]o one can take advantage of his own wrong.” Section 1-3-208, MCA. Accordingly, “this Court will not aid a party whose claim had its inception in the party’s wrongdoing, whether the victim of the wrongdoing is the other party or a third party.” Kauffman-Harmon, ¶ 19 (citation omitted). “Equity, of course, aids only those who have been vigilant, and will refuse relief to one who has been dilatory or wanting in diligence in prosecuting his cause of action.” Housing Authority of the City of Butte v. Murtha (1943), 115 Mont. 405, 410, 144 P.2d 183, 185 (citation omitted). Further, courts must inquire carefully into purported mistakes in order to prevent collusion and fraud by the parties making the proposals and are:
justified in refusing relief when there is good cause for believing that some other reason than mere mistake is behind the bidder’s unwillingness to perform the contract or his desire to withdraw from the bid. Eelief may be denied on the ground that it did not clearly appear that the mistake was one of material fact as distinguished from an unwise, hasty, or careless statement of prices intended to be bid. If the mistake might have been avoided by the exercise of ordinary care and diligence on the part of the bidder, he or she will be denied equitable relief.
64 Am. Jur. 2d Public Works and Contracts § 83 (2001) (emphasis added).
¶74 Had Oftedal exercised ordinary care and diligence, the mistakes would have been caught in the twelve days that passed between the bid opening and the award of the contract. Clearly Oftedal does not have clean hands in this matter — in fact, it was its own negligence that *74 created the situation from which we have now rescued Oftedal. Even if I were to agree that the contract between Oftedal and MDT was not created until execution of the formal contract, revision of such a contract is not mandatory under § 28-2-1611, MCA. The State should not have to bear the burden of Oftedal’s negligence. Oftedal’s errors were not unconscious ignorance or the result of forgetfulness. Because Oftedal’s hands were not clean, it is not entitled to equitable relief.
¶75 The primary function of Montana’s bidding statutes is to benefit the citizens. Baker, 218 Mont. at 239, 707 P.2d at 23. “Competitive bidding statutes are primarily intended for the benefit of the public rather than for the benefit or enrichment of bidders, and consideration of advantages or disadvantages to bidders must be secondary to the general welfare of the public.” 72 C.J.S. Public Contracts § 8 (1975). With this Opinion, we have placed the bidder’s pecuniary interests ahead of the interests of the public.
¶76 I would conclude the District Court did not abuse its discretion either in refusing to reform Oftedal’s contract or in concluding that a contract was formed between Oftedal and MDT upon acceptance of Oftedal’s bid. I would therefore affirm the decision of the District Court.