No. 88-541

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

R. JOHN RUEGSEGGER and DELMA
RUEGSEGGER,

        Plaintiffs and Respondents,

  -vs-

JEROME D. WELBORN and SANDRA WELBORN,

        Defendants and Appellants.

---

APPEAL FROM: District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Leonard J. Haxby, Butte, Montana

    For Respondent:

        Chester Lloyd Jones; Jones & Hoffman, Virginia City,
Montana

---

Submitted on Briefs: March 31, 1989

Decided: May 9, 1989

Filed:

_____
             Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal comes from a judgment entered in the Fifth Judicial District, Beaverhead County, Montana. The parties signed an agreement at the conclusion of an earlier foreclosure action whereby the foreclosed purchasers were allowed to lease the property for an additional two and one-half months. The lessees remained on the property beyond the agreed lease period and the lessors commenced this action. We affirm.

In 1979, Jerome and Sandra Welborn (Welborns) contracted to purchase approximately 800 acres of agricultural property from R. John and Delma Ruegsegger (Ruegseggers). In 1985 the yearly payments became delinquent. The parties amended the contract to alter the time of the payments in order to accommodate the Welborns' financial difficulties. However, when further payments remained unpaid, Ruegseggers filed a foreclosure action in 1986.

Judgment was entered against the Welborns on January 9, 1987. The judgment foreclosed all of the Welborns' interest in the property and quieted title to the property in the Ruegseggers. Incorporated by reference in the judgment was an "Agreement and Release" signed by the parties. The agreement stated in part that the Welborns would lease the property until March 15, 1987, "to bring about an orderly transfer of possession of such real property. . ." The agreement reserved to the Ruegseggers and their agents the right to enter the property to plant crops and maintain irrigation facilities and fences. The agreement further provided:

2

> [N]o further notice to quit shall be necessary at the end of the lease term and in case the Welborns shall hold over beyond the end of the lease term provided for herein, rent shall be deemed due from Welborns at the rate of $75.00 per day.
>
> . . .
>
> In the event either party is required to retain the services of an attorney to enforce any of the conditions contained herein, then the prevailing party shall be entitled to the recovery of reasonable attorney's fees, costs and reasonable expenses incurred in connection therewith.

During the period of the lease agreement, the parties attempted to reach agreement for lease of the property for an additional year. Just prior to March 15, 1987, Mr. Welborn informed Ruegseggers that unless a lease agreement was reached, he would file bankruptcy in order to keep the property. No lease agreement was reached, and on March 16, 1987, Welborns filed a Chapter 12 Bankruptcy petition.

The bankruptcy action automatically stayed any other proceeding against the Welborns. Ruegseggers filed a motion for summary judgment and sought relief from the stay in the bankruptcy court. On July 7, 1987, the United States Bankruptcy Court granted Ruegseggers' motion for summary judgment and concluded Welborns' interest in the property had been terminated by the state court decree and the terms of the agreement and release.

Ruegseggers filed this action on August 19, 1987. Welborns counterclaimed for restitution. Welborns argued Ruegseggers would be unjustly enriched unless they paid for the costs Welborns incurred in planting, irrigating, fertilizing and harvesting crops on the property during the holdover period. After a bench trial on August 11, 1988, the

3

District Court entered findings of fact, conclusions of law and judgment. Ruegseggers were awarded $9,150 in holdover rent; return of a grain sweep, motor and generator removed from the property by the Welborns, or $300 in lieu thereof; and attorney's fees and costs in the amount of $8,599.10, much of which was incurred in the bankruptcy action. This appeal followed.

Welborns raise these issues for our review:

1. Did the holdover rent clause of $75 per day constitute illegal liquidated damages and penalty?

2. Were Welborns entitled to planting and harvesting costs under a theory of unjust enrichment?

3. Did the District Court err in awarding attorney's fees incurred during the bankruptcy proceedings?

Issue No. 1

Did the holdover rent clause of $75 per day constitute illegal liquidated damages and penalty?

As mentioned above, the parties entered into a written agreement which in part provided for the lease of the property by the Welborns until March 15, 1987, and for rent at the rate of $75 per day "in case the Welborns shall hold over beyond the end of the lease term." Welborns now argue that $75 per day for the farmstead alone is unreasonable, and thus amounted to a penalty and illegal liquidated damages under § 28-2-721, MCA. They contend that since they were not entitled to harvest and profit from crops planted on the land, they were only obligated for the holdover rent on the house and outbuildings, which they estimated to be worth about $8 or $9 per day. We disagree with this conclusion. As stated in the District Court's Memorandum:

> The $75 per day agreement, even if it were contrary to the statute of liquidation damages, (which it wasn't) was considered by everyone as a

4

> reasonable rental. WELBORNS made this concession twice - - at the time of the agreement and later by . . . [their attorney's] letter . . . WELBORNS now argue that the figure is reasonable only when applied to a hold over of 365 days. This is not persuasive. Surely, the parties never contemplated a 365-day "hold over".

The agreement clearly contemplates more than mere use of the "farmstead" during the lease period. Although excluded from the lease agreement was a "second dwelling" which had been used by the Welborns' employees, the agreement clearly stated:

> It is further understood and agreed that the Welborns' possession of such premises during this lease term is for the purpose of residence, storage and sale of the personal property, crops and livestock, the feeding and pasturing of livestock owned by the Welborns and not that of another and is under no circumstances to be considered a lease for general agricultural purposes.

The lease agreement anticipated more than mere residential usage. Additionally, Welborns' argument that the rent was excessive has no basis in fact. Mr. Welborn testified that Ruegseggers offered to lease him the property for $37,500 per year, and that Welborn tentatively counteroffered to lease for $35,000. Both parties agreed that the holdover rent of $75 per day amounts to approximately $28,000 per year, substantially less than the worth of the property on a yearly basis.

Welborns have not shown the holdover rent provision to be excessive, unreasonable or illegal. The judgment for holdover rent is affirmed.

5

Issue No. 2

Were Welborns entitled to planting and harvesting costs under a theory of unjust enrichment?

Welborns claim they were entitled to restitution for their costs, incurred during the holdover period, for the planting and harvesting of crops which they lost when the Ruegseggers re-entered the property. This is an equitable claim under the theory of unjust enrichment and quasi-contract. We have held that equitable issues are a matter of discretion resting with the District Court and will be sustained unless an abuse of discretion is shown. Tope v. Taylor (Mont. 1988), 768 P.2d 845, 848, 45 St.Rep. 2242, 2246; Madison Fork Ranch v. L & B Lodge Pole Timber Products (1980), 189 Mont. 292, 302, 615 P.2d 900, 906.

Welborns were holdover tenants during the period for which they seek restitution. They had no right to remain on the property. Any ownership rights Welborns may have had in the property were extinguished in the foreclosure and quiet title action. As stated by the United States Bankruptcy Judge in his order of July 7, 1987:

> I conclude that by the date of the Chapter 12 bankruptcy petition the Debtors held no valid property right or interest in the land and property sold under Contract For Deed of December 14, 1979, and such interest had fully terminated by the agreement of the parties.

Welborns argue, however, that they acted under a mistake of law when they filed their bankruptcy petition, and thus should be entitled to restitution. We disagree. Section 53 of Restatement of the Law of Restitution states in part:

> (2) A person who, because of mistake of law, reasonably but erroneously believing

6

that he, or a third person, on whose account he acts is the owner:

(a) causes improvements to be made upon the land of another, is entitled to restitution for the value of the labor and materials used therein to the extent that the land is increased in value _if the mistake is reasonable_, as a condition to recovery by the owner of the land in equitable proceedings or in an action of trespass or other action for the mesne profits . . . (Emphasis added.)

Additionally, § 42 of Restatement of the Law of Restitution states in part:

(1) Except to the extent that the rule is changed by statute, a person who, in the mistaken belief that he or a third person on whose account he acts is the owner, has caused improvements to be made upon the land of another, is not thereby entitled to restitution from the owner for the value of such improvements; but if his mistake was _reasonable_, the owner is entitled to obtain judgment in an equitable proceeding or in an action of trespass or other action for the mesne profits only on condition that he makes restitution . . . (Emphasis added.)

In Montana, a defendant in a quiet title action is entitled to recover the value of improvements if he was "holding under color of title adversely to the claim of the plaintiff, in good faith . . ." Section 70-28-110, MCA. Welborns, however, were not holding under "color of title," but were merely holdover tenants. Additionally, it is apparent from Mr. Welborn's testimony that the holdover and the bankruptcy petition were not "in good faith."

The District Court concluded that the Welborns' act in holding over was wrongful and that their claims were "a flagrant violation of the [lease] agreement. . ." The

7

District Court carefully considered the issues of this case and concluded that the Welborns did not "come into this Court with clean hands." As the court stated in its Memorandum:

> This Court ordinarily would, and has, stretched the law to the limit in an effort to provide equitable relief to a distressed rancher/farmer caught up in the depressed agricultural economy of the times. To do so, however, there must be some peg to hang the equitable hat. None exists in this case. If it ever existed, it was extinguished on December 30, 1986, by the "AGREEMENT & RELEASE" incorporated into a judgment of this Court.

> The equities now lie with the RUEGSEGGERS and primarily because of the desperate but wrongful acts of the WELBORNS.

The District Court followed the maxim "He who seeks equity must do equity" and properly denied the claim for restitution. Welborns have failed to show any abuse of discretion.

Issue No. 3

Did the District Court err in awarding attorney's fees incurred during the bankruptcy proceedings?

Welborns argue that attorney's fees incurred during the bankruptcy proceedings should not have been awarded by the District Court because they were not awarded by the bankruptcy judge and thus the issue is "res judicata." We conclude this argument completely misses the mark.

The District Court awarded attorney's fees to Ruegseggers, some of which were incurred during the adversary action in the bankruptcy court, because the "Agreement and Release" specifically provided that either party could recover attorney's fees incurred in connection with enforcing

8

the agreement. Ruegseggers were dragged into bankruptcy court and were stayed from enforcing the agreement in state court. After the Ruegseggers were successful in having the automatic stay lifted, they removed the Welborns from the property through a writ of execution and proceeded to enforce the agreement in state court. The bankruptcy court was not asked to enforce the agreement. Nor did the bankruptcy court make any ruling on attorney's fees; none were requested by the Ruegseggers. The issue was not res judicata and Ruegseggers were not precluded from recovering attorney's fees as provided for by the agreement.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices