No. 00-108

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 291N

JEAN OWENS AND LARRY OWENS,

Plaintiffs and Appellants,

v.

RODERICK McNEIL, et al.,

Defendants and Respondents.

APPEAL FROM: District Court of the Third Judicial District,

In and for the County of Powell,

The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Gregory E. Paskell, Kalispell, Montana

For Respondents:

William P. Driscoll, Gough, Shanahan, Johnson & Waterman, Helena, Montana (Roderick McNeil);John D. Greef, Hamilton, Montana (HESARCO and BETCOR)

Submitted on Briefs: February 23, 2001

Decided: December 20, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Jean Owens and Larry Owens (the Owenses) appeal an order of the District Court for the Third Judicial District, Powell County, sustaining Roderick McNeil's objection to further proceedings on an accounting for the Crown Equipment.[1] We affirm.

¶3 The parties raised several issues which we have restated for clarity as follows:

¶4 1. Whether the District Court abused its discretion in determining not to conduct any further proceedings on accounting for the Crown Equipment.

¶5 2. Whether this appeal is untimely and should therefore be dismissed.

¶6 Because we conclude that Issue 1 is dispositive, we do not address Issue 2.

**Factual and Procedural Background**

¶7 This is the second appeal in this case. The first appeal was decided in a noncitable opinion handed down by this Court on March 30, 1995. That opinion contained the following recitation of the facts and procedure:

This is a consolidated action consisting of a quiet title action, which was filed by

McNeil on November 12, 1992, and an action for unlawful detainer, which was filed by the Owens[es] on January 27, 1993. Both actions concerned a dispute over the ownership of a metal refining plant, including the building, equipment and grounds . . . .

. . .

On July 26, 1992, Defendant, Rod McNeil, and Marty Puryer, president of [High Lonesome Mining, Inc.] HLM, entered into a written agreement whereby McNeil, acting as sole proprietor of Montana Refining Research (hereinafter MRR), agreed to purchase the Deer Lodge facility for the sum of $120,000. The terms required a $12,000 down payment, with the balance due in two years. Upon full payment of the $120,000, HLM was required to transfer full unencumbered title to the Deer Lodge facility to MRR. It is undisputed that McNeil paid the $12,000 down payment.

Jean Owens became a shareholder of HLM in July 1991, by investing $10,000 in the company. Jean Owens subsequently made two additional investments in HLM totaling $10,000. In September 1992, Ms. Owens loaned HLM $50,000, so that HLM could make payments on the Deer Lodge facility which was due under their contract with Base Metal and Energy (hereinafter BME). (HLM had contracted with BME to buy the Deer Lodge facility).

In October of 1992, Larry Owens, a HLM shareholder, notified Jean Owens that a dispute existed concerning the ownership of the Deer Lodge facility as a result of the July 26, 1992 contract between McNeil and Puryer. Subsequently, Ms. Owens decided to take title to the Deer Lodge facility by paying the remaining amount due under HLM's contract with BME. Accordingly, HLM executed a warranty deed to Jean Owens on November 10, 1992, three months after HLM sold the property to McNeil through the July 26, 1992 contract.

McNeil filed a quiet title action on November 12, 1992, and the Owens[es] filed an unlawful detainer action on January 27, 1993. McNeil filed a motion to consolidate the two cases arguing that both cases concerned the issue of the ownership of the property. After considering the parties' briefs and arguments, the court consolidated the two cases by order dated August 19, 1993. McNeil filed a motion for summary judgment on December 30, 1993. On February 16, 1994, certain HLM shareholders filed a motion to intervene. A hearing on the motions was held April 14, 1994, and

the District Court issued its opinion and order on April 14, 1994, granting McNeil's motion for summary judgment, and denying the shareholder's motion to intervene on the grounds that the motion was moot.

¶8 In addition to the facts and procedure outlined above, on April 4, 1994, McNeil filed his "Disclaimer of Interest" disclaiming "any further claim of right, title, or interest" to the Crown Equipment located at the Deer Lodge facility. As a result, the District Court issued an order on April 14, 1994, concluding that Larry Owens was entitled to possession of the Crown Equipment and ordered that counsel make arrangements for that equipment to be "peacefully and expeditiously" transferred to him. The Owenses subsequently appealed the District Court's order granting summary judgment, but did not appeal the court's order regarding the Crown Equipment.

¶9 On March 30, 1995, we affirmed the District Court in a noncitable opinion wherein we held that the Owenses' challenge to the validity of the July 26, 1992 contract regarding the Deer Lodge facility failed because the Owenses did not make a prima facie case for fraud, nor did they raise the issue of fraud in the District Court. Hence, we refused to consider that issue for the first time on appeal. In addition, we determined that since the July 26, 1992 contract met all of the requirements for a valid contract, the District Court did not err in concluding that it was a valid and enforceable contract for deed.

¶10 Thereafter, counsel for both parties filed motions for contempt alleging that the other party was interfering with the transfer of the equipment. The District Court scheduled a hearing for May 25, 1995, to address these matters, however, on the date set for hearing, the court instead held an in-chambers conference wherein it asked counsel for both parties to file status reports outlining where the case stood and what remained to be done.

¶11 On July 14, 1995, McNeil moved the District Court for entry of a decree and judgment quieting title in his favor to the Deer Lodge facility. In addition, on August 2, 1995, McNeil filed a "Consolidated Motion to Require Immediate Removal of Crown Equipment and Supporting Brief." McNeil asserted in his brief that his counsel had repeatedly written to Owenses' counsel requesting arrangements be made for the removal of the Crown Equipment, but the Owenses never responded. Hence, McNeil requested that the court establish a firm deadline for the Owenses to complete the removal of the Crown Equipment.

¶12 The District Court issued an order on March 12, 1996, quieting title to the Deer Lodge

facility to McNeil and reserving for later consideration the issue of damages for the Owenses as to the Crown Equipment. The court further ordered that the Owenses "remove any remaining Crown Equipment from the premises by the March 27, 1996 deadline," and that McNeil provide an accounting for the Crown Equipment by the same date. McNeil duly submitted his accounting for the equipment on the specified date, however, the Owenses failed to remove the equipment.

¶13 After the District Court issued its March 12, 1996 order, both parties filed a number of motions regarding the payment of the contract proceeds and the issuance of the deed. The Owenses subsequently requested a hearing on the issue of damages concerning the Crown Equipment. On August 7, 1996, McNeil filed his brief in opposition to the request for a hearing arguing that no further hearing was necessary since the Owenses had not responded to his accounting of the Crown Equipment. McNeil also asserted that the Owenses had "arguably abandoned the Crown Equipment and should be equitably estopped from further pursuing any claims against McNeil relating to it."

¶14 On September 10, 1996, the District Court entered an order wherein the court gave the Owenses ten days to remove any of the Crown Equipment remaining at the Deer Lodge facility. The court ordered that failure to remove the equipment would be deemed an abandonment and that the Owenses would "forfeit all right, title and interest in and to that property after September 21, 1996," if it was not removed from the Deer Lodge facility by that date. The court also ordered the Owenses to file a detailed response to McNeil's accounting as well as an itemization of the Owenses' claim for damages within 20 days.

¶15 The Owenses requested an extension of time to complete the removal of the Crown Equipment and accused McNeil of impeding their efforts to remove the equipment. McNeil responded that he did not have any control over the Crown Equipment or the Deer Lodge facility as he sold the Deer Lodge facility to a third party more than two years ago.

¶16 On October 18, 1996, the District Court entered an order directing the Owenses to file a detailed response to McNeil's accounting by November 1, 1996. The court also deemed that sufficient time had passed to allow for the recovery of the Crown Equipment by the Owenses. Although the District Court's "Register of Civil Actions" shows that a pleading entitled "Plaintiff's Objection Response to Accounting and Substantiation of Damages" was filed on November 4, 1996, no such document is contained within the District Court record. The Owenses contend in their brief on appeal that this document contained their accounting of the Crown Equipment as ordered by the District Court.

¶17 No further action was taken in this matter until March 17, 1997, when McNeil filed a motion pursuant to Rule 54(b), M.R.Civ.P., requesting that the District Court enter a final judgment on the quiet title decree previously issued by the court. The following day, the Owenses filed their objection to McNeil's motion and further moved the court to reconsider and reverse its March 12, 1996 order quieting title in the Deer Lodge facility to McNeil. The Owenses alleged that they were in receipt of new evidence showing that McNeil had perpetrated a fraud upon the court.

¶18 In a July 20, 1999 order, the District Court sustained McNeil's objection to any further hearings regarding the Crown Equipment. The court found that there was no accounting or proof of what equipment was actually brought to the Deer Lodge facility by the Owenses or what equipment was later removed by them. The court also noted that it purposely did not rule upon the Owenses' March 18, 1997 motion for reconsideration within 60 days of said motion, thus, pursuant to Rule 60(c), M.R.Civ.P., the motion had already been deemed denied. It is from this order that the Owenses appeal.

## Discussion

¶19 *Whether the District Court abused its discretion in determining not to conduct any further proceedings on accounting for the Crown Equipment.*

¶20 In an accounting action, the court is sitting in equity and as such it can determine from the facts presented, the testimony, and the circumstances what is most equitable. *Larry C. Iverson, Inc. v. Bouma* (1981), 195 Mont. 351, 376, 639 P.2d 47, 60 (citing *Reickhoff v. Consolidated Gas Co.* (1950), 123 Mont. 555, 217 P.2d 1076). Furthermore, this Court has repeatedly held that equitable issues are a matter of discretion resting with the District Court and will be sustained unless an abuse of discretion is shown. *Ruegsegger v. Welborn* (1989), 237 Mont. 317, 321, 773 P.2d 305, 308 (citing *Tope v. Taylor* (1988), 235 Mont. 124, 129, 768 P.2d 845, 848; *Madison Fork Ranch v. L & B Lodge Pole Timber Prods.* (1980), 189 Mont. 292, 302, 615 P.2d 900, 906).

¶21 The Owenses argue that the District Court erred in finding that they failed to file the appropriate documents regarding the inventory of equipment and accounting of damages as ordered by the court. The Owenses also argue that the District Court failed to schedule a hearing on the issue of damages as related to the Crown Equipment even after repeated requests by the Owenses for such hearing.

¶22 The record in this case reveals that the District Court issued an order on April 14, 1994, concluding that Larry Owens was entitled to possession of the Crown Equipment and ordered that counsel make arrangements for that equipment to be "peacefully and expeditiously" transferred to him. However, the Owenses failed to take possession of the equipment at that time. McNeil repeatedly sent letters to the Owenses asking them to remove the Crown Equipment from the Deer Lodge facility and the Owenses continued to ignore those requests.

¶23 In March 1996, the court granted McNeil's motion to require the Owenses to immediately remove any remaining Crown Equipment from the Deer Lodge facility. Again, the Owenses failed to do so. Finally, on September 10, 1996, more than two years after its initial order entitling the Owenses to take possession of the equipment, the District Court ordered that removal of the equipment had to be completed by September 21, 1996, or the equipment would be deemed abandoned.

¶24 As the District Court pointed out in its July 20, 1999 order, the original inventory of the Crown Equipment purchased by Larry Owens in 1992 was vague and contained duplicate entries. Moreover, there was no accounting by the Owenses of what equipment was transported to the Deer Lodge facility at the time the equipment was purchased or what equipment was removed from the Deer Lodge facility over the years by the Owenses. Consequently, any further attempts at providing an accounting of the Crown Equipment would be to no avail.

¶25 Accordingly, we hold that the District Court did not abuse its discretion in determining not to conduct any further proceedings on accounting for the Crown Equipment.

¶26 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER

/S/ W. WILLIAM LEAPHART

## /S/ JIM REGNIER

1. The Crown Equipment consisted of personal property seized in June 1992 and sold to satisfy a judgment held by Crown Rotational Molded Products, Inc. The equipment was purchased by Larry Owens and transferred to the metal refining plant (hereafter referred to as the Deer Lodge facility) that was the subject of the quiet title action at issue in this case.