# FILED

November 24 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 08-0243

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 401

TEXTANA, INC., SANDTANA, INC., and
SANDRA LEE BROWN.

        Plaintiffs and Appellants, Cross-Appellees,

        v.

KLABZUBA OIL & GAS, a limited family partnership
and KLABZUBA OIL & GAS, INCORPORATED,

        Defendants, Appellees, and Cross-Appellants.

APPEAL FROM:    District Court of the Twelfth Judicial District,
                 In and For the County of Hill, Cause No. DV 02-215
                 Honorable David Rice, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                James H. Goetz; Goetz, Gallik & Baldwin, P.C.; Bozeman, Montana

                John D. Stephenson; Jardine, Stephenson, Blewett & Weaver, P.C.; Great Falls, Montana

        For Appellees:

                Danielle V. Wiletsky and Keith D. Tooley; Welborn, Sullivan, Meck & Tooley, P.C.; Denver, Colorado

                Matthew Hutchison; Kaufman, Vidal, Hileman & Ramlow, P.C.; Kalispell, Montana

                         Submitted on Briefs:  June 17, 2009
                                   Decided:  November 24, 2009

Filed:

                                _____
                                        Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Textana, Inc., Sandtana, Inc., and Sandra Lee Brown, the executor for the estate of John O. Brown (collectively Browns), appeal the judgment and related orders of the Twelfth Judicial District Court, Hill County, in favor of Klabzuba Oil & Gas and Klabzuba Oil & Gas, Inc. (collectively Klabzubas).  Klabzubas cross-appeal the court's decision to reduce sanctions against Browns from $1.4 million to $94,000.

¶2    This appeal represents the second trip for these parties to this Court.  The parties litigated the first suit on very similar issues in 2000 before then District Court Judge John Warner (*Browns I*). We affirmed the district court's imposition of a constructive trust on Browns.  *Textana v. Klabzuba*, 2003 MT 157N, 316 Mont. 532, 77 P.3d 551.  We now affirm in part and reverse in part.

¶3    The parties left few stones unturned in scouring the record for appealable issues.  We review the following ten issues:

¶4    *Did the District Court properly refuse to dismiss Klabzubas' counterclaims regarding the Starcher claims based on statute of limitations grounds?*

¶5    *Did the District Court properly award a 12.5 percent interest in the Starcher claims to a non-party?*

¶6    *Did the District Court properly refuse Browns' evidence of their costs in developing the Starcher claims?*

¶7    *Did the District Court properly instruct the jury on punitive damages?*

¶8 *Did the District Court properly dismiss Browns' 2 percent ORR claims as barred by res judicata?*

¶9 *Did the District Court properly dismiss Browns' interest claims where Klabzubas withheld, but later paid, production revenues due to Browns?*

¶10 *Did the District Court properly deny sanctions against Klabzubas based on alleged false statements by their counsel?*

¶11 *Did the District Court properly award attorney fees against Browns without first holding a hearing?*

¶12 *Did the District Court properly allow Klabzubas to double-count interest on the judgment?*

¶13 *Should the District Court's first sanctions order be reinstated and the cause remanded for entry of additional attorney fees to Klabzubas?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶14 J. Burns Brown and his son, John O. Brown, worked together in the oil and gas industry in north central Montana. J. Burns Brown and Robert Klabzuba began collaborating in 1974 to lease and develop oil and gas fields. John O. Brown and Robert Klabzuba entered into a written contract for professional services (PSC) in 1976 with a primary term of one year. John O. Brown agreed to perform landman and other services in support of Robert Klabzubas' business of exploring oil and gas reserves, drilling wells, and producing oil and gas. John O. Brown received a salary and expenses.

¶15 The PSC required John O. Brown to investigate opportunities in the Havre area and to present the opportunities to Robert Klabzuba. The PSC required John O. Brown to assign to Robert Klabzuba a 75 percent interest in all leases. The PSC further provided that John O. Brown and his father, J. Burns Brown, had the option to participate up to 25 percent by paying a proportionate share of the acquisition costs for the land and development costs of the wells. The PSC also entitled Browns to a 2 percent overriding royalty (ORR) on production revenues on all oil and gas leases obtained by Browns and assigned to Klabzubas. The parties entered into a similar PSC each year through 1997.

¶16 Klabzubas, who were headquartered in Texas, would conduct the geological analysis and identify areas desirable for oil and gas leasing. Klabzubas provided their confidential analysis of the results to Browns, who would then negotiate and obtain leases, check titles, and make public land recordings. Klabzubas relied on Browns to function as their land office in Montana. Browns owed fiduciary duties to the Klabzubas, including the duty to report and inform on available opportunities.

¶17 Browns operated most of the wells in which the parties shared an interest through their operating company, J. Burns Operating Company (JBBO). John O. Brown and his wife, Sandra Brown, owned and operated JBBO. John O. Brown and his siblings also owned and operated another oil company, 5B Company (5B). J. Burns Brown created 5B in 1981 for the purpose of participating in various leasing opportunities.

¶18 Klabzubas came to Havre on November 17, 1997, to inform Browns that they planned to terminate the business relationship. The final PSC expired on January 1, 1998. The

4

parties continued to co-own shares in existing leases and gas wells, but the operation of the wells transferred from Browns to Klabzubas in April of 1998.

¶19    Browns and Klabzubas have engaged in protracted and complicated litigation since the expiration of the final PSC. Browns filed a declaratory judgment action in Hill County regarding Browns' rights to prospect and explore for oil and gas in north central Montana after the termination of the final PSC. Klabzubas responded with a number of counterclaims in the action that we describe as *Browns I*.

¶20    *Browns I* went to trial in the fall of 2000. The district court determined that the final PSC had terminated on January 1, 1998. From about 1993 to 1998, Klabzubas had identified 940 sections, over 601,000 acres of land, as desirable for oil and gas leases. The court imposed a constructive trust on 201 of these sections. The court required Browns to "account for and disgorge" 75 percent of the profits received after January 1, 1998, on these 201 sections. The court required Klabzubas to pay for 75 percent of the costs of developing the wells on the 201 sections. The court further determined that Browns "shall not have a 2 percent overriding royalty in said lease and mineral interests" in the constructive trust lands for those leases acquired after the termination of the PSC in 1998. This Court affirmed Judge Warner's final judgment. *Textana*, ¶ 6.

¶21    Klabzubas withheld ORR and production payments for *all* of the leases held jointly by Browns after the final judgment in *Browns I*. Browns filed an action in Hill County in December of 2002 to collect the unpaid ORR and production revenues on leases located on sections *not* covered by Judge Warner's constructive trust order.

5

¶22 District Judge Marc G. Buyske assumed jurisdiction over this second action. The District Court dismissed with prejudice Browns' claims for unpaid ORR on 546 jointly-owned wells based on *res judicata*. The court determined that the parties had litigated the ORR issue in *Browns I* and that the district court in *Browns I* had dismissed Browns' claims to the ORR on all properties jointly owned by Browns and Klabzubas.

¶23 Klabzubas periodically sent delinquent production payments to Browns between April of 2002 and 2006, so that by the time of the jury trial in May of 2006, Klabzubas no longer owed Browns the principal amounts on the production payments. Klabzubas refused to pay interest to Browns on the delinquent production payments. The District Court determined before trial that Browns were not entitled to accrued interest on the overdue production payments, except for one well – the State-4 well. The parties disputed ownership to the State-4 well. Browns argued that Klabzubas owed $302,284.31 in production revenues on the State-4 well. Klabzubas agreed to deposit the $302,284.31 in the registry of the court while the parties resolved a title dispute to the State-4 well.

¶24 Klabzubas asserted a counterclaim in which they alleged that they had learned for the first time of a productive well that Browns had developed on land obtained by Browns in 1983 (Starcher claim). Klabzubas claimed that John O. Brown in 1983 wrongfully had concealed from Robert O. Klabzuba his acquisition of the Starcher claim in violation of the PSC. Klabzubas argued that Browns had a duty to acquire the Starcher lease on behalf of Klabzubas.

6

¶25     Browns moved for summary judgment on the Starcher counterclaim based on the eight-year statute of limitations for breach of a written contract. Browns argued that they had disclosed their interest in the Starcher claims in numerous public documents and through documents submitted to Klabzubas over the years. The District Court denied Browns' summary judgment motion in May of 2005.

¶26     The Starcher counterclaim went to trial in May of 2006. John O. Brown testified that he had informed Robert Klabzuba in 1983 about Browns' acquisition of the Starcher claims. John O. Brown testified that Robert Klabzuba was not interested in participating. Robert O. Klabzuba had died by the time of the trial. Mainly through the testimony of Stephen Frazier (Klabzubas' vice president), Klabzubas maintained that Robert O. Klabzuba never would have declined an interest in the Starcher claims. Klabzubas further claimed that John O. Brown never had disclosed his interest in the Starcher claims to Robert Klabzuba or Frazier. Browns argued alternatively that Klabzubas should be obligated to pay their share of the costs in developing and operating the Starcher wells if the court determined that Klabzubas were entitled to a 75 percent share.

¶27     The District Court sent the statute of limitations issue to the jury. The court instructed the jury on the issues of equitable tolling and fraudulent concealment. The jury awarded $1,483,232.41 to Klabzubas in compensatory damages. These damages equaled 75 percent of the production revenues from the Starcher claims from June of 1983 to the date of trial.

¶28     The District Court instructed the jury on punitive damages and malice and fraud. The court sent a verdict form to the jury that allowed findings of fraud and malice and punitive

damages. The jury determined that Browns had acted with both malice and fraud, but awarded no punitive damages.

¶29 The District Court entered Findings of Fact and Conclusions of Law on December 4, 2006. The court directed that Browns convey a 75 percent interest on the Starcher claim to Klabzubas. The court further ordered that Browns transfer a 12.5 percent interest in the Starcher claims to 5B, a non-party. The court rejected Browns' claims for the costs of operating and developing the Starcher wells. The court also denied Browns' claim for interest on the delinquent production payments. The court finally found that Browns were entitled to the $302,284.31 of production revenue on the State-4 well. The court rejected Browns' claim for accrued interest on the basis that Browns had failed to seek interest in a timely manner.

¶30 In a separate order on that same day, the court, without conducting a hearing, imposed sanctions against Browns "in the form of reasonable attorney fees incurred by [Klabzubas] in this case." The court cited M. R. Civ. P. 37(d), as authority for the sanctions. Judge Buyske did not rule, however, on what amount of attorney fees Klabzubas should be awarded. Judge Buyske instead set a hearing solely to evaluate the reasonableness of Klabzubas' fees. Judge Buyske never imposed an actual amount of attorney fees before he relinquished jurisdiction over the case in late December 2006. The court also did not address Browns' separate motion for sanctions against Klabzubas for alleged false statements to the court by Klabzubas' counsel.

¶31    District Judge David G. Rice assumed jurisdiction over the case on January 3, 2007. Judge Rice conducted a hearing on Klabzubas' request for attorney fees. Judge Rice limited proof to the reasonableness of the amount of Klabzubas' attorney fees request. Klabzubas claimed over $1.4 million as their attorney fees. Judge Rice later reversed himself upon discovering that Judge Buyske's order had not been final.

¶32    Judge Rice determined that no evidence supported a discovery sanction under Rule 37(d). Judge Rice concluded, however, that Browns should be sanctioned pursuant the court's equitable powers outlined in *Foy v. Anderson*, 176 Mont. 507, 511-12, 580 P.2d 114, 116-17 (1978). Judge Rice trimmed Klabzubas' request of $1.4 million in fees to an actual award of $94,000 in attorney fees. The court further denied Browns' motion for sanctions against Klabzubas. The court entered a $2,260,834.78 judgment in favor of Klabzubas. The judgment constituted the jury verdict, pre-judgment interest on the jury verdict, post-judgment interest on the jury verdict, sanctions, and attorney fees and costs.

¶33    Klabzubas again withheld production revenues that they owed to Browns after Judge Buyske's December 4, 2006, order. The production payments accumulated at the rate of more than $163,000 per month. Klabzubas withheld sufficient unpaid production revenues to satisfy the judgment by the time of the May 6, 2008, judgment. Klabzubas filed a Satisfaction of Judgment on August 21, 2008. Browns appeal and Klabzubas cross-appeal.

## DISCUSSION

¶34    *Did the District Court properly refuse to dismiss Klabzubas' counterclaims regarding the Starcher claims based on statute of limitations grounds?*

9

¶35 The parties dispute the appropriate standard for determining *who* decides whether to toll the statute of limitations when a dispute exists as to when the party "discovered" facts giving rise to a claim. The confusion over the applicable standard in this case hinges on the difference between "accrual" and "discovery." Accrual begins at breach in a breach of contract action. *Kitchen Krafters v. Eastside Bank of Montana*, 242 Mont. 155, 163, 789 P.2d 567, 571 (1990) (*abrogated in part on other grounds*). Discovery serves to toll the statute of limitations only if fraudulent concealment has hindered a party from discovering a breach. *Kitchen Krafters*, 242 Mont. at 163, 789 P.2d at 571-72.

¶36 The District Court determined that the question must be submitted to the jury in light of the existence of sufficient facts to raise a question of fraudulent concealment. This Court determined in *Kitchen Krafters* that the statute of limitations runs from the time of breach in a breach of contract action. The Court reasoned that, unlike a tort claim, a breach of contract constitutes a legal wrong "independent of actual damage." *Kitchen Krafters*, 242 Mont. at 163, 789 P.2d at 571-72. This Court also noted, however, that the statute of limitations runs from the time of discovery if there has been fraudulent concealment. Nothing in *Kitchen Krafters* limits application of the fraudulent concealment tolling exception to § 27-2-102, MCA, "injury to person or property." This fraudulent concealment rule applies even in a breach of contract claim. *Kitchen Krafters*, 242 Mont. at 163, 789 P.2d at 571-72, citing Williston on Contracts at § 2025C.

¶37 Fraudulent concealment entails the employment of artifice, planned to prevent inquiry or escape investigation, and to mislead or hinder information acquisition. *Holman v.*

10

*Hansen*, 237 Mont. 198, 202, 773 P.2d 1200, 1203 (1989) (citing *E.W. v. D.C.H.*, 231 Mont. 481, 488, 754 P.2d 817, 821 (1988)). The standard changes where a trust relationship exists, such as a fiduciary. Mere silence or failure to reveal information in the presence of a duty to disclose can constitute fraudulent concealment sufficient to toll the statute of limitations. *Estate of Watkins v. Hedman*, 2004 MT 143, ¶ 25, 321 Mont. 419, 91 P.3d 1264. Further, in *Watkins* we stated that "these [fraudulent concealment] are exactly the type of factual questions appropriate for resolution by a trier of fact." *Watkins*, ¶ 27.

¶38 *Watkins* contradicts Browns' argument that fraudulent concealment requires some affirmative conduct to conceal or mislead. Further, this Court stated in *Kerrigan v. O'Meara,* 71 Mont. 1, 227 P. 819 (1924), that a trust or confidence relationship modifies the general rule that there must be some affirmative acts to prove fraudulent concealment. Mere silence may suffice when a trust or confidence relationship exists between the parties. *Kerrigan*, 71 Mont. at 7, 227 P. at 821.

¶39 The District Court determined that Browns owed Klabzubas the highest duties of loyalty and fairness as a fiduciary. Browns served as Klabzubas' "eyes and ears" in Montana. These duties required Browns to inform Klabzubas of all available opportunities. Browns' silence and failure to disclose their interest in the Starcher claims rises to the level of fraudulent concealment under *Watkins* and *Kerrigan* in light of their fiduciary duty. The fact that Browns put on evidence of various public filings and invoices sent to Klabzubas that indicated Browns' ownership interest in the Starcher claims failed to satisfy these duties.

11

Browns trust relationship with Klabzubas imposed on Browns an affirmative duty to disclose. *Kerrigan*, 71 Mont. at 7, 227 P. at 821.

¶40 The record also raises legitimate questions as to whether Browns made affirmative misrepresentations. John O. Brown changed his story through various depositions and during trial regarding when he had acquired his interest in the Starcher claims and when he had disclosed the interests to Klabzubas. John O. Brown testified in his first deposition that he had told Robert Klabzuba that he acquired the Starcher claims in the 1970s, before entering into a PSC with Klabzubas. He testified in his second deposition, however, that he first had told Robert Klabzuba about the Starcher claims in 1981. John O. Brown changed his story again at trial. He testified that he first had notified Robert Klabzuba in May of 1983 of the Starcher claims after receiving a letter from Cole Chandler, his partner in the Starcher claims. Cole Chandler testified, however, that John O. Brown never had informed him of any relationship with Klabzubas. The record reveals sufficient evidence of potential fraudulent concealment to support the District Court's decision to send the statute of limitations question to the jury. *Watkins*, ¶ 27.

¶41 *Did the District Court properly award a 12.5 percent interest in the Starcher claims to a non-party?*

¶42 The District Court imposed a constructive trust over the Starcher claims after the jury found in favor of Klabzubas on the grounds of fraudulent concealment. The District Court granted a 12.5 percent interest in the Starcher claims to 5B, a non-party to the action, as part

12

of its equitable division of the Starcher claims. John O. Brown's family members control 5B. Browns argue that they lacked notice of the need to defend against this claim at trial.

¶43 Equitable rulings of this type fall within the district court's discretion and we will sustain these rulings unless the district court abused its discretion. *Ruegsegger v. Welborn*, 237 Mont. 317, 321, 773 P.2d 305, 308 (1989) (*abrogated in part on other grounds*). The plaintiff in *Howard v. Dalio*, 249 Mont. 316, 318, 815 P.2d 1150, 1151 (1991), alleged that her sister had breached her duty as trustee by cashing out certificates of deposit that had been left by their deceased sister's estate. The district court imposed a constructive trust against the defendant sister, for the benefit of the plaintiff sister, as well as for the benefit of a third sister, who remained a non-party to the lawsuit. *Howard*, 249 Mont. at 318, 815 P.2d at 1151. The defendant sister alleged that the court lacked jurisdiction to impose a valid judgment in favor of the non-party sister. *Howard*, 249 Mont. at 319, 815 P.2d at 1152.

¶44 The Court upheld the district court's imposition of a constructive trust that named the non-party sister as one of the beneficiaries. The Court recognized as "pivotal" the fact that it possessed jurisdiction over the person upon whom the trust had been imposed. The Court rejected the notion that all potential beneficiaries needed to be parties. *Howard*, 249 Mont. at 319-20, 815 P.2d at 1152. The defendant sister could point to no prejudice from the court's imposition of the constructive trust as the complaint and the pretrial order had put the defendant sister on notice of the plaintiff's efforts to seek a constructive trust for the benefit of both the plaintiff and the non-party sister. *Howard*, 249 Mont. at 320, 815 P.2d at 1152. Browns likewise can point to no prejudice.

13

¶45 Klabzubas' second amended counterclaim, filed almost two years before trial, alerted Browns of their intent to seek a constructive trust over the Starcher claim. Klabzubas' proposed findings of fact and conclusions of law specifically named 5B as a potential beneficiary of the constructive trust. Frazier testified at trial regarding the percentage interests held by the various entities during the early 1980s when Browns had acquired the Starcher claims. David B. Brown, John O. Brown's brother, also testified regarding the customary 12.5 percent split between 5B and John O. Brown employed by Browns. The court did not abuse its discretion in awarding 5B an interest in the Starcher claims when Browns had notice of Klazbuzas' efforts to seek a constructive trust. *Howard*, 249 Mont. at 320, 815 P.2d at 1152.

¶46 *Did the District Court properly refuse Browns' evidence of their costs in developing the Starcher claims?*

¶47 Browns contend that Klabzubas' claim of entitlement to 75 percent of the revenues from the Starcher claims brings with it a corresponding obligation to pay 75 percent of the development costs. The District Court ruled that Browns' failure to "come to this Court with clean hands" precluded the court from shielding Browns from the "risk of loss of their fraudulent scheme."

¶48 The District Court relied upon *Ruegsegger*, where the Court denied an offset to a defendant who had not acted in good faith. The plaintiff landowner in *Ruegsegger* had commenced foreclosure proceedings against the defendant. The parties initially attempted to settle the matter through an agreement that allowed the defendant to stay on the property for

14

a set period. The defendant's worsening financial condition prevented him from performing the terms of the settlement, but the defendant remained on the property beyond the terms of the settlement agreement. *Ruegsegger*, 237 Mont. at 318-19, 773 P.2d at 306-07.

¶49 The defendant next filed a frivolous bankruptcy petition in a failed effort to delay foreclosure proceedings. The bankruptcy court lifted the automatic stay and the landowner continued his foreclosure action. The defendant filed a counterclaim for restitution to recoup costs that he had incurred in planting, irrigating, fertilizing, and harvesting crops while the defendant had been leasing the property from the plaintiff. The Court denied the offset due to the fact that the defendant had not acted in good faith in filing the frivolous bankruptcy petition. *Ruegsegger*, 237 Mont. at 321-22, 773 P.2d at 308-09.

¶50 Klabzubas based their claim on Browns' alleged breach of contract. The defendant in *Ruegsegger* proceeded under the equitable claim of unjust enrichment. Klabzubas argue that the District Court's imposition of a constructive trust triggered application of *Ruegsegger*. Both Klabzubas and the District Court failed to address Browns' argument that § 27-1-303, MCA, applies.

¶51 Section 27-1-303, MCA, provides that no person can recover a greater amount in damages than he could have gained by full performance of the contract in a breach of contract action. Klabzubas alleged that Browns had breached their duty under the PSC to disclose their interest in the Starcher claims. Klabzubas' claim lies in contract and § 27-1-303, MCA, applies even though the court imposed a constructive trust.

15

¶52    The principal espoused in § 27-1-303, MCA, supports the well-established "benefit of the bargain rule." *Castillo v. Franks*, 213 Mont. 232, 242, 690 P.2d 425, 430 (1984); § 27-1-311, MCA. This rule places the injured party in as good a position as if the contract had been performed, less any costs or other loss that the injured party has avoided by not having to perform. *Castillo*, 213 Mont. at 242, 690 P.2d at 430.

¶53    The PSC obligated Klabzubas to pay 75 percent of the development costs. The court's imposition of a constructive trust granted to Klabzubas 75 percent of profits—the result contemplated by the PSC. The PSC, in turn, obligated Klabzubas to incur 75 percent of the costs. This outcome provides Klabzubas with the benefit of the bargain, less Browns' expenses that Klabzubas avoided by not having to perform.

¶54    We further note that Judge Warner imposed a similar constructive trust in *Browns I*. Judge Warner required Klabzubas to pay 75 percent of the costs if they were to benefit from 75 percent of Browns' disgorged profits. Judge Warner required Klabzubas to pay their share of the costs despite Browns' breach of their fiduciary duties. We reverse the District Court's decision to exclude Browns' evidence of their costs in developing the Starcher claims.

¶55    *Did the District Court properly instruct the jury on punitive damages?*

¶56    The District Court allowed the jury to consider whether to award punitive damages based on Klabzubas' claim that Browns had acted with actual malice or actual fraud. Although the jury awarded no punitive damages, Browns argue that the court's decision to provide the punitive damages instruction permitted Klabzubas to introduce otherwise

16

inadmissible evidence of illegal bad acts by Browns. We address this issue in light of Browns' claims that the evidence introduced by Klabzubas prejudiced the jury regarding the other issues.

¶57 We will not reverse a district court on the basis of its jury instructions absent an abuse of discretion. *Cartwright v. Equitable Life Assurance Soc. of U.S.*, 276 Mont. 1, 26, 914 P.2d 976, 992 (1996). Section 27-1-220, MCA, generally precludes punitive damages recovery for breach of contract claims. This Court has held, however, that § 27-1-221, MCA, permits an award of punitive damages where the claimant "proves by clear and convincing evidence that the defendant is guilty of actual fraud or actual malice outside the contract context." *Weter v. Archbambault*, 2002 MT 336, ¶ 40, 313 Mont. 284, 61 P.3d 771. Tort type damages also may be available in contract actions where a special relationship exists or for traditional contract related torts such as fraud. *Grenfell v. Anderson*, 2002 MT 225, ¶ 80, 311 Mont. 385, 56 P.3d 326 (citing *Daniels v. Dean*, 253 Mont. 465, 473, 833 P.2d 1078, 1083 (1992)).

¶58 The court determined that Browns' fraudulent concealment and breach of fiduciary duty outside the PSC warranted the jury's consideration of Klabzubas' punitive damages claim. The court relied upon its undisputed finding that Browns owed Klabzubas the highest duty of loyalty under their fiduciary relationship. Klabzubas presented evidence that Browns had failed to disclose their 1983 Starcher acquisition to Klabzubas. This alleged omission supported Klabzubas' claim of actual fraud or actual malice based on the special relationship between the parties. *Grenfell*, ¶ 80.

17

¶59 Frazier also testified regarding John Brown's affirmative misrepresentation in 1991 that he had acquired the Starcher claims in the 1970s. John Brown contradicted Frazier's testimony on this point. This contradiction remained for the jury to resolve. Frazier's claim of John Brown's affirmative misrepresentation provides further support, however, for the court's decision that it was for the jury to decide whether Klabzubas had proven by clear and convincing evidence that Browns had acted with actual fraud or actual malice in withholding information about their interest in the Starcher claims. *Weter*, ¶ 40.

¶60 *Did the District Court properly determine that res judicata barred Browns' 2 percent ORR claims?*

¶61 Klabzubas began to withhold Browns' ORR payments for all leases jointly held by Browns and Klabzubas after the district court's judgment in *Browns I*. Browns filed this second action in large part to recover what they claimed to be the unpaid ORRs. The District Court dismissed Browns' claim on the basis that Browns and Klabzubas previously had litigated the issue of the 2 percent ORR in *Browns I*.

¶62 *Res judicata* bars a claimant from relitigating issues and claims decided in a former action or issues and claims that the litigant had an opportunity to litigate in the former action. *Balyeat Law, P.C. v. Hatch*, 284 Mont. 1, 3, 942 P.2d 716, 717 (1997). A district court's application of the doctrine of *res judicata* presents a question of law that we review to determine if it was correct. *Thornton v. Alpine Home Center*, 2001 MT 310, ¶ 10, 307 Mont. 529, 38 P.3d 855.

¶63 Browns contend that the court in *Browns I* never resolved the issue of whether the PSCs between 1976 and 1997 entitled Browns to a 2 percent ORR on the numerous wells jointly developed by the parties. Browns further contend that they could not have raised the issue in *Browns I* as "Klabzubas did not systematically terminate the ORR payments to Browns until after *Browns I*." Browns argued that the 2 percent ORR arose in *Browns I* only "tangentially on two issues."

¶64 The district court in *Browns I* addressed the ORR issue in two contexts. The court first addressed certain leases that Browns had obtained when Browns and Klabzubas began to compete for leases after the final PSC terminated on January 1, 1998. Klabzubas had shared certain proprietary geotechnical information and other trade secrets with Browns during the parties' relationship. Klabzubas had identified 940 sections between 1993 and 1998 as desirable to lease based on this information.

¶65 The court determined that it would have been unfair to interpret the PSC to preclude the Browns from attempting to acquire leases in any of the 940 sections despite the existence of the fiduciary relationship. To interpret the PSC in this way would "effectively prohibit Browns from engaging in the exploration business in the whole area [and] restrain Browns from exercising their lawful profession and business."

¶66 The court reached a different conclusion, however, with respect to about 200 leases that Klabzubas obtained after the parties had begun to compete. Browns had misappropriated certain trade secret information with respect to these 200 leases, and, in turn, had violated their fiduciary duty to Klabzubas. The court imposed a constructive trust

19

on Browns' interest in those 200 leases in an effort to provide a remedy for Browns' breach of their fiduciary duty. The court required Browns "to account for and disgorge 75 percent of the profits" from these 200 leases. The court, "[a]s a corollary," required Klabzubas to pay for 75 percent of the costs of developing these 200 leases.

¶67 The court nevertheless determined that Browns were not entitled to the 2 percent ORR on any of 200 leases. The court noted that the 2 percent ORR constituted payment to Browns for landman services, and did not bear any relation to the fiduciary relationship between the parties after January 1, 1998. The court thus determined that the "Browns should not have an overriding royalty on production under leases taken after January 1, 1998." This denial of ORR applied to the 200 leases that Klabzubas had obtained after the PSC terminated. *Res judicata* bars relitigating these 200 leases. *Bayleat Law*, 284 Mont. at 3, 942 P.2d at 717.

¶68 The court in *Browns I* also addressed a number of leases that contained disputed or unverified amounts of ORRs. Klabzubas and Browns jointly owned approximately 546 leases at the time that the last PSC ended on January 1, 1998. Klabzubas dismissed as "unverified" Browns' claim to ORRs on approximately 170 of the 546 leases. The following exchange between the court and Klabzubas' counsel confirms that no dispute existed as to the validity of Browns' right to the ORR on the remaining leases obtained before January 1, 1998:

> Court: Do I have to make a decision about the amount of a 2 percent overriding royalty on 300 and some odd wells?
>
> Counsel: No . . . I think that quite a few of them are being paid properly.

The court further attempted to clarify the issue:

> Court: I've got 170 wells with a disputed amount of overriding interest.

> Counsel: Unverified I think is probably more accurate.

The court never fully resolved this issue. The court instead ordered the parties to make further efforts to settle these disputed leases.

¶69 *Browns I* resolved only the Browns' right to ORR payments on the 200 leases obtained after the last PSC ended on January 1, 1998. The court subjected these after-acquired leases to a constructive trust and denied Browns' claim for ORR payments. The court in *Browns I* never resolved, however, the dispute regarding Browns' claim to ORR on the jointly held leases developed by the parties during the 21-year life of the PSCs. The District Court wrongly concluded that *res judicata* barred Browns' claims for withheld ORR payments on the leases that the parties jointly had developed during the 21-year period covered by the PSCs.

¶70 *Did the District Court properly dismiss Browns' interest claims where Klabzubas withheld, but later paid, production revenues due to Browns?*

¶71 The district court in *Browns I* imposed a constructive trust on lands "acquired by Browns between January 1, 1998 and January 25, 2001." Browns refused to comply with the constructive trust order for a period of seventeen months. The court eventually granted Klabzubas' motion to enforce the constructive trust order. Klabzubas, in the interim, had withheld from Browns production payments on all jointly held leases.

21

¶72 Browns filed suit in December 2002 to recover almost $2 million in overdue production payments. Klabzubas had repaid Browns almost the entire principal amount of the withheld production revenues by the time of trial in May 2006. Browns admit that these production revenues have become a "non-issue." Klabzubas refused to pay, however, any accrued interest on these production revenues that they had withheld between 2002 and the time of trial in 2006. The District Court dismissed Browns' claims for interest on the withheld production revenues based on § 27-1-214, MCA. The District Court determined that Browns' acceptance of the entire principal of unpaid production payments had waived any claims to interest.

¶73 Section 27-1-214, MCA, provides that "accepting payment of the whole principal, as such, waives all claims to interest." Section 27-1-214, MCA. We review for correctness a district court's application of law. *James Talcott Const., Inc. v. P & D Land Enterprises*, 2006 MT 188, ¶ 28, 333 Mont. 107, 141 P.3d 1200. The District Court relied on *Kawasho Intl. U.S.A. Inc. v. Lakewood Pipe Serv. Inc.*, 152 Cal. App.3d 785, 794 (1983), which addressed the issue of waiver when a party accepts payment of the principal. We note, however, that the court in *Kawasho* refused to apply the waiver principle. *Kawasho*, 152 Cal. App.3d at 795. We further note that the court in *Kawasho* recognized that the waiver rule cannot be invoked where the conditions of payment preclude the person entitled to payment from asserting his claim to interest at the time of the payment. *Kawasho*, 152 Cal. App.3d at 795.

¶74 Browns' interest claim arises from a contractual debt under the PSC. Klabzubas' decision to withhold production payments caused a debt to Browns to accumulate under the PSC. Klabzubas attempted to make good on this overdue contractual obligation by making a series of irregular payments to Browns in the months leading up to the trial. Browns asserted a claim for accrued interest on the withheld production revenues in their second amended complaint. We decline to view Browns' acceptance of this series of sporadic payments from Klabzubas as having extinguished their claim for accrued interest. *Kawasho*, 152 Cal. App.3d at 795.

¶75 The District Court's application of § 27-1-214, MCA, fails to account for a party's right to interest under § 27-1-211, MCA. Section 27-1-211, MCA, provides that a party entitled to recover damages certain, or capable of being made certain by calculation, also may recover interest on the damages. Section 27-1-211, MCA. Browns sought to recover production payments contemplated by the PSC. The PSC set forth the division of the production payments between Browns and Klabzubas. Klabzubas operated the jointly held wells after the last PSC terminated in 1998. Klabzubas had in their possession information needed to calculate the sum certain due to Browns. *Ramsey v. Yellowstone Neurosurgical Assoc. P.C.*, 2005 MT 317, ¶ 21, 329 Mont. 489, 125 P.3d 1091.

¶76 The general rule provides that "when the debtor knows what he is to pay, and when he is to pay it, no demand is necessary to start the running of interest from the date the payment should have been made." *W.J. Lake & Co. v. Montana Horse Products Co.*, 109 Mont. 434, 443, 97 P.2d 590, 594 (1940). Interest began to run upon Klabzubas' withholding of

23

Browns' share of the production payments due under the terms of the PSC. Klabzubas cannot extinguish this interest obligation by repaying the principal at some later date through a series of irregular payments. *Ramsey*, ¶ 21. We do not interpret § 27-1-214, MCA, to allow Klabzubas to withhold contractually obligated payments on millions of dollars of production revenues for several years and avoid interest obligations by repaying the full amount of the principal on the eve of trial. The District Court improperly dismissed Browns' claim for interest on production payments wrongfully withheld by Klabzubas.

¶77 Browns also sought a declaratory judgment and accounting of revenue for the State-4 well. The parties' dispute regarding the ownership rights prompted Klabzubas to withhold $302,284.31 in production revenues from the State-4 well. Klabzubas deposited the disputed $302,284.31 in the registry of the court. The District Court later awarded this amount to Browns, along with accrued interest, but only the interest that accrued from the time that Klabzubas had deposited the funds with the court registry. The District Court rejected Browns' claim to an additional $70,000 in interest on the disputed State-4 well for the time period from November 2002 until the date that Klabzubas had deposited the $302,284.31 with the court registry.

¶78 The court reasoned that Browns had failed to assert a timely claim for interest after Klabzubas had deposited the amount in the registry of the court. Browns specifically had asserted a claim for interest on the withheld production revenues in their second amended complaint. In a separate count, however, Browns sought a declaratory judgment and accounting on the State-4 well. Browns did not request interest on the disputed $302,284.31.

24

The District Court restricted Browns' claims to those alleged in their second amended complaint. The court determined that any further amendments would prejudice Klabzubas.

¶79    The district court retains discretion to allow amendment of a pleading. *Porter v. Galarneau*, 275 Mont. 174, 188, 911 P.2d 1143, 1151-52 (1996). Browns sought to amend their complaint to add the claim for accrued interest more than two years after filing the original complaint. The general rule calls for a court to allow amendments. *Peuse v. Malkuch*, 275 Mont. 221, 227, 911 P.2d 1153, 1156 (1996). The court must balance this rule in favor of amendments, however, with considerations of prejudice to the opposing party. *Peuse*, 275 Mont. at 227, 911 P.2d at 1156.

¶80    The District Court conducted a hearing on the proposed amendments. The District Court cited Browns' repeated failures to meet the court's pleading deadlines and Browns' repeated attempts to amend their damages calculations. A district court has the authority to set deadlines for amendments to pleadings. *Lindey's, Inc. v. Professional Consultants, Inc.*, 244 Mont. 238, 242, 797 P.2d 920, 923 (1990). The court recognized that the parties had engaged in protracted discovery and had extended significant resources in preparing this case. The court determined that any further amendments by Browns to their pleadings would prejudice Klabzubas. We cannot determine that the District Court abused its discretion in denying Browns' motion to amend their pleadings to add a claim for accrued interest on the State-4 well at that late stage in the litigation. *Peuse*, 275 Mont. at 227, 911 P.2d at 1156.

¶81    *Did the District Court properly deny sanctions against Klabzubas based on alleged false statements by their counsel?*

25

¶82 Browns argue that Klabzubas' counsel knowingly made six false statements to the District Court in his March 4, 2005, brief regarding the State-4 well monies deposited in the court registry. Klabzubas asserted that Browns improperly had been withholding revenue payments on this well for years. Browns objected to Klabzubas claim as patently false and demanded that the District Court impose sanctions against Klabzubas pursuant to M. R. Civ. P. 11. Judge Buyske never ruled on the Browns' motion for sanctions. Judge Rice eventually denied Browns' motion.

¶83 We afford district courts wide latitude to determine whether the factual circumstances of a particular case warrant imposition of sanctions. We recognize that "the district court has tasted the flavor of the litigation and is in the best position to make these kinds of determinations." *D'Agostino v. Swanson*, 240 Mont. 435, 446, 784 P.2d 919, 926 (1989). The flavor of this litigation most likely left a sour taste in the mouth of the District Court. The competing allegations, prevarications, and outright falsehoods presented by the parties leaves little confidence in the accuracy of any statement.

¶84 Browns alleged that Klabzubas falsely had accused Browns of keeping oil lease revenues in a personal account, rather than in an escrow account. Klabzubas cited deposition testimony of Sandra Brown, however, in which she admitted to having held these oil lease revenues in a JBBO company account. Browns further alleged that Klabzubas falsely accused Browns of relying on title confusion to withhold oil lease revenue payments. Once again, however, Klabzubas cited both Sandra Brown's deposition and John O. Brown's deposition in which each admitted that they had not paid Klabzubas and other owners for a

period of years due to unresolved title issues. The record reveals a reasonable factual basis for Klabzubas to have made the allegations.

¶85 Browns further contend that the District Court failed to hold a hearing on its request for sanctions as due process requires. M. R. Civ. P. 11 requires a court to hold a hearing in order to satisfy due process requirements before the court may impose sanctions. *Kinsey-Cartwright v. Brower*, 2000 MT 198, ¶ 17, 300 Mont. 450, 5 P.3d 1026. The hearing requirement protects the party against whom sanctions are sought. The court imposed no sanctions. Nothing in M. R. Civ. P. 11, or within the ambit of due process, requires a court to conduct a hearing before deciding that a party's conduct does *not* warrant the imposition of sanctions.

¶86 *Did the District Court properly award attorney fees against Browns without first holding a hearing?*

¶87 Browns allege that the District Court abused its discretion in awarding attorney fees without first holding a hearing. We review for abuse of discretion a district court's award of attorney fees. *Good Schools Missoula, Inc. v. Missoula County Public School Dist. No. 1*, 2008 MT 231, ¶ 16, 344 Mont. 374, 188 P.3d 1013.

¶88 A district court must conduct an evidentiary hearing when it imposes attorney fees pursuant to M. R. Civ. P. 11, or under the court's equitable powers. *Good Schools Missoula*, ¶ 16. A district court should examine evidence elicited through oral testimony, cross examination, and introduction of exhibits at the hearing to determine whether imposition of

sanctions would be appropriate. *Glaspey v. Workman*, 234 Mont. 374, 377-78, 763 P.2d 666, 668 (1988).

¶89    Judge Rice correctly held a hearing on the reasonableness of the amount of Klabzubas' fees. Judge Rice failed to protect Browns' due process right, however, in not considering the appropriateness of imposition of a fee award in the first place. Judge Rice imposed the sanctions against Browns pursuant to *Foy*. This Court repeatedly has noted the extremely limited scope of the equitable power to impose sanctions under *Foy*. *Goodover v. Lindey's Inc.*, 255 Mont. 430, 447, 843 P.2d 765, 775 (1992).

¶90    We cannot overcome the unusual role played by Judge Rice in this litigation in evaluating whether *Foy* provided support for his imposition of sanctions. Judge Rice did not oversee the pretrial litigation or the trial itself. Judge Rice assumed jurisdiction over the case after Judge Buyske had entered findings of fact, conclusions of law, and an order. Judge Buyske also had entered a separate order that imposed sanctions against Browns. Judge Rice was sitting in a position little different from this Court on appeal.

¶91    Judge Rice reviewed the record and modified Judge Buyske's sanctions award. This record review alone could not equip Judge Rice to make a decision on the appropriateness of an imposition of sanctions against Browns under the limited *Foy* exception. Judge Rice abused his discretion in failing to conduct a hearing on the appropriateness of imposition of sanctions against Browns under these circumstances.

¶92    *Did the District Court properly allow Klabzubas to double-count interest on the judgment?*

28

¶93 Browns filed their Notice of Appeal with this Court on May 21, 2008. Klabzubas filed their Notice of Cross-Appeal on May 27, 2008. Klabzubas filed a Notice of Satisfaction of Judgment in the District Court on August 21, 2008. Browns objected on September 2, 2008. Browns claim that Klabzubas double-counted the amount of interest owed by including pre-judgment interest and using estimated revenue figures on the Starcher well, rather than actual revenue figures. Browns also claim that Klabzubas inflated the interest owed on the attorney fee award.

¶94 The District Court has never ruled on the satisfaction of judgment or how Klabzubas calculated the interest. We are in no position to rule on this issue. The District Court first must evaluate Klabzubas' accounting. The District Court can consider this issue, as needed, at the conclusion of the other proceedings on remand.

¶95 *Should the District Court's first sanctions order be reinstated and the cause remanded for entry of additional attorney fees to Klabzubas?*

¶96 We agree with Judge Rice that Judge Buyske misapplied M. R. Civ. P. 37(d) in imposing sanctions against Browns. The District Court on remand can determine the appropriateness of any sanction being imposed against Browns following a hearing.

**CONCLUSION**

¶97 We affirm in part, reverse in part, and remand for limited proceedings consistent with this Opinion. The District Court on remand shall allow Browns to present evidence regarding their costs in developing the Starcher claims. The District Court shall consider Browns' claim for 2 percent ORR on those leases not covered by Judge Warner's

29

constructive trust in *Browns I*. The District Court shall address Browns' interest claims from Klabzubas' withholding of production payments, except for the State-4 well. The District Court can reconsider at the conclusion of these proceedings whether to proceed with an imposition of sanctions against Browns. The District Court must conduct a hearing regarding whether sanctions would be appropriate under the limited *Foy* exception. Finally, the District Court must resolve Klabzubas' claim to have satisfied the judgment in light of the outcome of these proceedings on remand.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JIM RICE